IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Ken HUR, Attorney at Law.

Supreme Court

*No. 96–0015–D. Filed June 26, 1996.*

(Also reported in 549 N.W.2d 447.)

PER CURIAM.   We review the recommendation of the referee that the license of Ken Hur to practice law in Wisconsin be suspended for two years as discipline for professional misconduct. Attorney Hur engaged in business dealings with a client in which his own interests conflicted with those of the client, fraudulently altered and recorded legal documents relating to those business dealings, and handled incompetently a legal matter for that client.

We determine that the seriousness and extent of Attorney Hur's professional misconduct, viewed in light of prior discipline having been imposed on him, in part, for similar misconduct, warrant the suspension of his license to practice law in this state for two years. Attorney Hur took advantage of his professional relationship with a client to further his own pecuniary interests, to the client's disadvantage. In addition, he engaged in fraud in furtherance of his own interests in his dealings with the client.

Attorney Hur was admitted to practice law in Wisconsin in 1951 and practiced in Madison until relocating to Florida in 1981. He has been disciplined twice previously for unprofessional conduct: the court publicly reprimanded him in October, 1985 for neglect of clients' legal matters and failure to respond to inquiries from the Board of Attorneys Professional Responsibility (Board) concerning client grievances, *In re Disciplinary Proceedings Against Hur*, 126 Wis. 2d 119, 375 N.W.2d 211; in October, 1985, the Board publicly reprimanded him for entering into a business transaction with a client in which they had differing interests without making full disclosure of his interest and obtaining the client's informed consent or advising her to obtain independent advice in the matter and for his failure to seek court permission to withdraw from representing a client and failing to take reasonable steps to avoid foreseeable prejudice to that client's appellate rights.

In this proceeding, Attorney Hur ultimately pleaded no contest to the misconduct allegations in the Board's complaint. Accordingly, the referee, Attorney John Schweitzer, made the following findings of fact concerning Attorney Hur's conduct in dealings with a client he had represented in a number of real estate transactions.

In May, 1976, Attorney Hur represented the client in the purchase, with another person, of a 68-acre parcel of property on land contract. Early the following year, Attorney Hur sought to obtain a portion of that parcel and prepared and had his client and the other owner sign a land contract conveying 11 acres of it to Attorney Hur's wife for $450 cash and the $10,000 balance on land contract. Attorney Hur did not record that land contract, and he and his wife made no payments

on it and did not pay the real estate taxes as required by the contract.

In April, 1977, Attorney Hur convinced his client and the other owner to convey their interest in the remaining 57 acres of the parcel on land contract to a limited partnership in which he would be included, each of them having a one-third interest as limited partner, with contract payments, real estate taxes and other expenses of the property to be shared equally. Attorney Hur represented to them that the limited partnership would be a great advantage to them and save them money.

Attorney Hur prepared and in early April, 1977 the partners executed a limited partnership agreement pursuant to which the client and the third person conveyed their interest in the property to the partnership. In fact, the limited partnership document did not meet the statutory requirements for the formation of a limited partnership and, as a result, that partnership never gained legal existence.

Attorney Hur prepared the land contract conveying the client's and other owner's interests in the property to the partnership and, together with the two owners, signed it. He paid $3000 for his interest in the partnership property. The land contract was never recorded, and the partnership never made any of the required monthly payments; those payments, as well as the real estate taxes on the property and other expenses, were paid by the client.

In April, 1981, the third owner sought to divest himself of ownership interest in the property, and Attorney Hur represented the client and his wife in structuring the transaction and preparing the necessary legal documents. The owner quitclaimed his interest in the 68-acre parcel to the client's wife for

$5000 cash and a $6000 promissory note from the partnership. The client paid the $5000 and the partnership executed the note but made no payments on it. Attorney Hur paid nothing in the transaction.

In May, 1981, Attorney Hur loaned the client and his wife $10,000 to pay farming expenses, for which the client gave a $10,000 mortgage note to Attorney Hur's wife secured by a mortgage prepared by Attorney Hur or an employe of his law office. The property securing that note was the client's undivided one-half interest in the 57-acre parcel as well as in a 40-acre farm the client had purchased three years earlier in a land contract transaction in which he was represented by Attorney Hur. That contract had been paid and a warranty deed obtained the following year.

In the summer of 1981, Attorney Hur told his client that he intended to close his law office and move to Florida. He stated that his wife owned 11 acres of the 68-acre parcel, despite the fact that she had not made any payments on the land contract by which she purported to purchase that property, and that he was half-owner of the remaining 57 acres. He asserted that the client was obligated to purchase his and his wife's interests in the property for $68,250, which Attorney Hur claimed represented the fair market value of their "equity" interests.

In August, 1981, at Attorney Hur's instruction and direction and on his advice that they were obligated to do so by virtue of the Hurs' purported equity interest in the 68-acre parcel, the client and his wife gave Attorney Hur's wife a promissory note for $68,250 secured by a mortgage on their undivided one-half interest in that parcel and in the 40-acre farm they owned. Attorney Hur, or a lawyer in his firm, prepared the necessary documents and acted as attorney for the cli-

ent in this transaction. The client and his wife executed the documents at Attorney Hur's instruction and direction and on his advice that they were obligated to do so. Attorney Hur did not advise the client that he and his wife had no equity interest in any of that property or that the value of any equity interest they claimed to have did not approach the amount he asserted.

The referee found that the note and the underlying mortgage had been procured fraudulently and without adequate consideration and had been executed by the client and his wife based on the advice of Attorney Hur, whom they regarded as their attorney in the matter. The client and his wife repaid the $10,000 loan they had obtained from Attorney Hur for farming expenses but made no payments on the $68,250 promissory note.

In September, 1987, with neither the knowledge nor consent of the client, Attorney Hur altered the mortgage underlying the $10,000 note executed in 1981 by crossing out part of the legal description and changing it to cover the entire property owned by the client and his wife, rather than their one-half interest specified in the original mortgage. Attorney Hur then re-recorded the mortgage, asserting it to be a "corrective" mortgage. At about the same time, again without the client's knowledge or consent, Attorney Hur altered the mortgage underlying the $68,250 note in the same way and re-recorded it as a "corrective" mortgage. Each of these re-recorded mortgages was returned by the register of deeds to Attorney Hur.

In November, 1992, Attorney Hur's wife commenced a mortgage foreclosure action against the client and his wife seeking to foreclose their interest in the 68-acre parcel and the 40-acre farm to satisfy the debt, alleged to exceed $186,000, arising from the promissory notes executed in 1981. It was not until

that foreclosure action had been commenced and the client had retained other counsel that Attorney Hur told him of the alteration and re-recording of the mortgages. The foreclosure action was dismissed in 1995 for the plaintiffs' failure to comply with discovery.

The referee found that while the documents forming the basis of the foreclosure action had been signed by the client and his wife on the advice, instruction and direction of Attorney Hur, at no time did Attorney Hur make full or adequate disclosure to the client concerning their differing, competing and adverse interests in the transactions or advise them to obtain independent counsel to represent them because of those differing interests. As a result, the client and his wife never gave informed consent in any of those transactions.

In 1993, long after the $68,250 note had been executed, Attorney Hur recorded the 1977 land contract for the 11-acre parcel. When he did so, he knew that in 1981 he and his wife had purported to convey to the client and his wife their interest in that parcel, together with the remaining 57 acres of the original parcel, for $68,250, thus terminating the earlier land contract. Attorney Hur represented on the real estate transfer return submitted with the contract for recording that he was the sellers' attorney and agent.

On the basis of the foregoing facts, the referee made the following conclusions of law. By participating in the creation and execution of the $68,250 promissory note payable to his wife and secured by a mortgage on the client's undivided one-half interest in property in order to have the client and his wife buy out the Hurs' alleged ownership interest in the property, Attorney Hur violated SCR 20.27(1),[1] which prohibits a lawyer

---

[1] SCR 20.27 provided, in pertinent part:

from entering into a business transaction with a client in which they have differing interests if the client expects the lawyer to exercise professional judgment for the client's protection unless the client has consented after full disclosure. By representing to the client and his wife that they were required to buy out his and his wife's interest in the property when he and his wife had no merchantable interest in the property because their claimed interest derived from an unrecorded and unperformed land contract, Attorney Hur engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4).[2]

The referee also concluded that Attorney Hur engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by altering and re-recording two mortgages from his clients to him and his wife to secure promissory notes, by recording the 1977 land contract in 1993 knowing that a prior transaction was intended to terminate that land contract, and by representing on a real estate transfer return in 1993 that he was the

---

**Limiting business relations with a client.** (1)   A lawyer may not enter into a business transaction with a client if they have differing interests in that transaction and if the client expects the lawyer to exercise his or her professional judgment in the transaction for the protection of the client, unless the client has consented after full disclosure.

The corresponding current supreme court rule is SCR 20:1.8.

.[2] SCR 20:04 provided, in pertinent part:

**Misconduct.**
A lawyer shall not:
. . .
(4)   Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

The corresponding current supreme court rule is SCR 20:8.4(c).

client's attorney and agent, at a time when the foreclosure action against them was pending and he was not their attorney and agent.

Finally, the referee concluded that by drafting a document purporting to create a limited partnership which did not comply with the applicable statute and by drafting a document conveying the interests of two owners of the 68-acre parcel to the purported partnership, Attorney Hur handled a legal matter which he knew or should have known he was not competent to handle without associating with a lawyer competent to do so and handled a legal matter without preparation adequate in the circumstances, in violation of the provisions of the ABA Code of Professional Responsibility in effect prior to their codification as SCR 20.32[3] in 1980.

As discipline for that misconduct, the referee recommended that Attorney Hur's license to practice law be suspended for two years, as the Board had urged. The referee emphasized the seriousness of the misconduct and Attorney Hur's two prior reprimands, one for discipline similar to that involved here — entering into a business transaction with a client in which their interests were adverse without notifying the client of that fact and advising consultation with an independent attorney.

---

[3] SCR 20:32 provided:

**Failing to act competently.** A lawyer may not:
(1)   Handle a legal matter which the lawyer knows or should know that he or she is not competent to handle without associating with a lawyer who is competent to handle it.
(2)   Handle a legal matter without preparation adequate in the circumstances.
(3)   Neglect a legal matter entrusted to the lawyer.

The corresponding current supreme court rule is SCR 20:1.1.

In addition to the license suspension, the referee recommended that, as a condition of reinstatement, Attorney Hur be required to successfully write the Wisconsin bar examination. That recommendation addressed the referee's concern that the public needs to be protected from Attorney Hur until he has acquired more competence in the practice of law and a greater appreciation of his ethical responsibilities. The referee noted that Attorney Hur has not actively practiced law for some 14 years and that merely requiring him to attend continuing legal education courses would not afford the public sufficient protection.

We adopt the referee's findings of fact and conclusions of law and determine that a two-year license suspension is appropriate discipline to impose for Attorney Hur's professional misconduct considered here. We determine further that the requirements for reinstatement following that suspension set forth in the court's rule, SCR 22.28(4),[4] are sufficient to ensure

---

[4] SCR 22.28 provides, in pertinent part:

**Reinstatement.**
(4) The petition for reinstatement shall show that:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law, including a list of specific activities pursued.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted

Attorney Hur's competence and fitness before his license to practice law is restored.

We also determine that Attorney Hur is to be assessed the costs of this disciplinary proceeding. While he had claimed indigency in the proceeding before the referee, he made no showing to warrant relieving him of the payment of costs. Further, he did not heed the referee's urging that he file with the court a simple financial statement of his and his wife's assets, income and expenses to support his indigency claim. Absent that information, the referee recommended that Attorney Hur be required to pay the costs of the proceeding.

IT IS ORDERED that the license of Attorney Ken Hur to practice law in Wisconsin is suspended for a period of two years, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order Ken Hur pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Ken Hur to practice law in Wisconsin shall remain suspended until further order of the court.

---

by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements of SCR 22.26.

(i) The petitioner indicates the proposed use of the license if reinstated.

(j) The petitioner has fully described all business activities during the period of suspension or revocation.

(k) The petitioner has made restitution or settled all claims from persons injured or harmed by petitioner's misconduct or, if the restitution is not complete, petitioner's explanation of the failure or inability to do so.

IT IS FURTHER ORDERED that Ken Hur comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.