842 So.2d 811 (2003)
THE FLORIDA BAR, Complainant,
v.
Edward H. WOHL, Respondent.
No. SC95770.
Supreme Court of Florida.
March 20, 2003.
*812 John F. Harkness, Jr., Executive Director, John Anthony Boggs, Division Director and Edward Iturralde, Bar Counsel, Tallahassee, FL, for Complainant.
John A. Weiss of Weiss & Etkin, Tallahassee, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding an alleged ethical breach by Edward H. Wohl. We have jurisdiction. See art. V, § 15, Fla. Const. The Florida Bar filed a complaint alleging that Wohl violated rule 4-3.4(b) of the Rules Regulating the Florida Bar, "Fairness to Opposing Party and Counsel," by offering an inducement to a witness.

FACTS
After a hearing, the referee made the following findings of fact.
Edward H. Wohl is a member of The Florida Bar. He has represented Bruce Winston (hereinafter "Bruce") in various matters for over twenty-five years, but always retained co-counsel when litigation was involved. Bruce and his brother, Ronald Winston (hereinafter "Ronald"), were engaged in a bitter dispute concerning the Florida estate of their mother, Edna Winston, which included substantial assets in the New York estate of their father, jeweler Harry Winston. Bruce was allegedly having difficulty obtaining information from Ronald, who was a trustee of their father's estate. Bruce located Katherine Kerr, a former employee of the Winston family diamond business "Harry Winston International" (HWI), to help him understand *813 the business practices of the company.
Subsequently, there was a meeting between Kerr's lawyers and Bob Silver and David Boies (representing Bruce as trial attorneys), to draw up an agreement between Bruce and Kerr. Wohl was involved in drafting the agreement as well as some aspects of the negotiations. The final agreement stated that Kerr would provide "assistance" to Bruce and included compensation to Kerr of: (1) $25,000 for her first fifty hours of assistance; (2) a potential "bonus" ranging between $100,000 and over $1,000,000, depending on "the usefulness of the information provided," which would be paid after a "culmination event" by which Bruce would have received some relief against Ronald; and (3) additional hours of assistance would be paid at the rate of $500 per hour over the bonus amount and after the culmination event.
The referee examined whether Kerr was a consultant, an expert witness, or a fact witness. Wohl testified, and other attorneys provided affidavits, that no one expected Kerr to testify in the litigation. However, Kerr did testify at depositions in the Florida proceedings involving Edna Winston's estate. Also, she was listed as a witness by the estate's personal representative after Wohl disclosed that Kerr had personal knowledge about Ronald's possible diversions of assets, including a missing diamond necklace. After the personal representative listed Kerr as a witness, Wohl also listed Kerr as a possible witness. The referee determined that Kerr was a fact witness for Wohl because she provided factual information about what she had seen, heard, and experienced while working at the family business.
The referee also examined whether the agreement was an inducement to Kerr. The referee noted that the "bonus" provision of the agreement was especially significant; Kerr could earn up to $1,000,000 depending on the usefulness of the information she provided to enable Bruce to recover assets, damages by settlement, or a judgment. Therefore, Kerr's ability to receive the bonus only arose if Bruce was successful in reaching a culmination event. The referee stated that such "provisions go to the very heart of the evil sought to be avoided by [rule 4-3.4(b) ]: the temptation of a witness to color his or her testimony" and concluded that the agreement was "an inducement that went far beyond reasonable expenses incurred by the witness."
Wohl argued that he should not be found guilty of offering the inducement to Kerr, claiming that he had minimal involvement in the agreement. However, the referee found that Wohl participated in the formation and negotiation of the agreement. Wohl had written to the other attorneys involved and suggested changes to the agreement. He also received drafts from the other attorneys and engaged in phone conversations with them regarding the agreement. The referee stated that even if Kerr's attorneys and Bruce's other attorneys handled most of the negotiation, Wohl could not do through others that which he could not do himself. See R. Regulating Fla. Bar 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another).
As to guilt, the referee recommended that by participating in the development of the agreement, Wohl offered an inducement to a witness in violation of rule 4-3.4(b).
The referee next considered the appropriate disciplinary sanction. Relying on the Florida Standards for Imposing Lawyer Sanctions, the referee found one aggravating factor, 9.22(i), substantial experience in the practice of law. The referee found *814 four mitigating factors: (1) 9.32(a), absence of a prior disciplinary record; (2) 9.32(b), absence of a dishonest or selfish motive; (3) 9.32(e), full and free disclosure to disciplinary board or cooperative attitude toward proceedings; and, (4) 9.32(g), character or reputation. The referee recommended that Wohl be sanctioned by an admonishment for minor misconduct and placed on probation for one year, with the condition that Wohl successfully complete a Practice and Professionalism Enhancement Program.
The Bar petitioned for review of the referee's disciplinary recommendation. Wohl cross-petitioned, arguing against the referee's findings of fact, recommendation as to guilt, and disciplinary recommendation.

ANALYSIS
We first consider Wohl's challenges to the referee's findings of fact. Wohl argues that the referee's report needs to be "supplemented." Wohl alleges that no one expected Kerr to testify when the agreement was originally made. He claims that Kerr's knowledge about the diamond necklace is the reason she later became a witness, and that her knowledge about the necklace did not come to light until after the agreement.
Our standard of review regarding a referee's factual findings is as follows:
A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Absent a showing that the referee's findings are clearly erroneous or lacking in evidentiary support, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee.
Florida Bar v. Sweeney, 730 So.2d 1269, 1271 (Fla.1998) (quoting Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996)).
Wohl insists that the point when Kerr told him about the diamond necklace is a key factor, arguing that the attorneys considered Kerr to be a consultant, and not a witness, until they knew about the missing necklace. However, despite Wohl's claims, knowledge of the diamond necklace is not the determinative factor. The record indicates that Kerr was a fact witness, not a consultant. Kerr had personal knowledge about the workings of HWI and Ronald's actions. Furthermore, the agreement that Wohl helped prepare even specified that Kerr would assist Bruce in identifying and recovering assets and damages related to and arising from the diversion of assets and other misconduct. Kerr was to be compensated for what she had witnessed. As the referee stated, paying an individual who has personal knowledge of the facts is to pay a witness, whether or not that person is expected to testify. Therefore, Wohl has not met the burden of demonstrating that the referee's findings of fact are clearly erroneous or unsupported by the record. See Sweeney, 730 So.2d at 1271. We approve the referee's findings of fact.
Next we consider Wohl's challenge to the referee's recommendation as to guilt. Wohl alleges that the findings of fact do not support a violation of rule 4-3.4(b). He argues that he should not be found guilty of inducing a witness because his participation in developing the agreement was minimal. Further, Wohl continues to claim that he did not intend to have Kerr testify when the agreement was made. Rather, he considered Kerr to be a consultant. Wohl argues that this is significant because rule 4-3.4(b) is meant to apply to testifying witnesses, not all witnesses. He notes that the comment to the rule states *815 that the proscribed conduct is payment to "an occurrence witness ... for testifying."
We find Wohl's arguments are without merit. First, we do not view Wohl's participation as minimal. He participated in the formation and negotiation of the agreement. Second, although Wohl claims that rule 4-3.4(b) applies only to testifying witnesses, the plain language of the rule does not support that view:
A lawyer shall not:
. . . .
(b) fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, noncontingent fee for professional services of an expert witness; and reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings.
R. Regulating Fla. Bar 4-3.4(b) (emphasis added). Clearly, the rule is not limited to testifying witnesses. Further, the history of the rule indicates that it was amended to address situations such as the instant case. In 1992, in Florida Bar v. Cillo, 606 So.2d 1161 (Fla.1992), Cillo was accused of paying money to a former client as an inducement for the client to dismiss his Bar complaint against Cillo. The question arose whether it was misconduct to induce a witness to tell the truth by offering money or other valuable considerations. At the time, there was no rule governing such a situation so we did not impose discipline for that conduct. We were concerned, however, that the payment of compensation other than costs to a witness could adversely affect credibility and fact-finding functions. We directed that a rule be developed to clarify that any compensation paid would be improper unless certain conditions were met. Id. at 1162. Thereafter, in 1994, in Florida Bar re Amendments to Rules Regulating the Florida Bar, 644 So.2d 282 (Fla.1994), we amended rule 4-3.4(b) to its present form. In so doing, we established that a witness may not be paid, unless the payments fall within the clearly delineated exceptions, such as payments for reasonable expenses or payments to an expert witness. None of the exceptions to the rule are present in Wohl's case. Therefore, we conclude that the referee's findings of fact support his recommendation that Wohl be found guilty of violating rule 4-3.4(b).

DISCIPLINE
Next, we consider the Bar's challenge to the referee's recommended discipline of an admonishment for minor misconduct and probation for one year, with the condition that Wohl successfully complete a Practice and Professionalism Enhancement Program. It is well established that in reviewing a referee's recommended discipline, this Court's "scope of review is somewhat broader than that afforded to findings of facts because, ultimately, it is [the Court's] responsibility to order an appropriate punishment." Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989). However, the referee's recommendation will generally be upheld if supported by "a reasonable basis in existing caselaw." Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
The Bar argues that the appropriate discipline is a ninety-day suspension. Wohl argues that the referee's recommendation of an admonishment is too severe and that diversion to ethics school is more appropriate. We agree with the Bar and find that the referee's recommended discipline of an admonishment for minor misconduct under the circumstances of this *816 case does not have a reasonable basis in existing case law.
In Florida Bar v. Jackson, 490 So.2d 935 (Fla.1986), a Florida attorney contacted a New York attorney and requested that his clients be paid $50,000 for their testimony in a pending insurance claim case in New York. We quoted with approval the referee's report which stated:
[T]he very heart of the judicial system lies in the integrity of the participants.... Justice must not be bought or sold. Attorneys have a solemn responsibility to assure that not even the taint of impropriety exists as to the procurement of testimony before courts of justice. It is clear that the actions of the respondent... violates [sic] the very essence of the integrity of the judicial system and ... the oath of his office.
Jackson, 490 So.2d at 936. Jackson was decided under the former Code of Professional Responsibility, well before the adoption of rule 4-3.4(b). We found that Jackson's actions violated Disciplinary Rule 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice) and suspended Jackson for three months.
In Florida Bar v. Machin, 635 So.2d 938 (Fla.1994),[1] we imposed a ninety-day suspension on an attorney who offered to set up a $30,000 trust fund for the minor child of a victim in a criminal case if the victim agreed not to testify at the client's sentencing hearing. Like Wohl, Machin had no prior disciplinary record. Unlike Wohl, Machin disclosed his agreement to the state attorney, the sheriff, and the victim assistance representative. The Court suspended Machin for ninety days.
Offering financial inducements to a fact witness is extremely serious misconduct. As the referee stated, tempting a witness to color testimony is an evil that should be avoided. We condemn the practice of compensating fact witnesses in violation of rule 4-3.4(b) in no uncertain terms. We find that Wohl's misconduct has demonstrated an attitude that is wholly inconsistent with professional standards. Case law requires that Wohl be suspended. But for the four mitigating factors, Wohl could have earned a more severe sanction. Thus, we disapprove the referee's recommended discipline of an admonishment and conclude that the seriousness of Wohl's misconduct and violation of rule 4-3.4(b) warrant a ninety-day suspension.
We approve the referee's other recommendations that require Wohl to participate in probation for one year and to successfully complete a Practice and Professionalism Enhancement Program. Such requirements are not unusual in disciplinary cases. Florida Bar v. Nunes, 679 So.2d 744 (Fla.1996) (attorney suspended for ninety days and required to complete specified continuing legal education hours).

CONCLUSION
Accordingly, we approve the referee's recommended findings of fact and recommendation of guilt as to the violation of rule 4-3.4(b). We disapprove the referee's recommended discipline of an admonishment for minor misconduct.
Edward H. Wohl is hereby suspended from the practice of law for ninety days. The suspension will be effective thirty days from the filing of this opinion so that Wohl can close out his practice and protect the interests of existing clients. If Wohl *817 notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Wohl shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment is entered for The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Edward H. Wohl in the amount of $1,601.85, for which sum let execution issue.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, LEWIS, QUINCE and CANTERO, JJ., and SHAW, Senior Justice, concur.
NOTES
[1] Machin was decided before rule 4-3.4(b) was amended. Machin was found guilty of violating rules 3-4.3 (conduct contrary to honesty and justice) and 4-8.4(d) (conduct prejudicial to the administration of justice).